1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MATTHEW DENNIS,                           No.  2:16-cv-0542 JAM AC P

12                  Plaintiff,

13        v.                                    ORDER and

14   SCOTT KERNAN, et al.,                      FINDINGS AND RECOMMENDATIONS

15                  Defendants.

16

17        **I.        Introduction**

18             Plaintiff is a state prisoner currently incarcerated at the California Substance Abuse

19   Treatment Facility in Corcoran, under the authority of the California Department of Corrections

20   and Rehabilitation (CDCR).  Plaintiff proceeds pro se and in forma pauperis with a Second

21   Amended Complaint (SAC), ECF No. 32, which this court now screens pursuant to 28 U.S.C. §

22   1915A.  This matter is referred to the undersigned United States Magistrate Judge pursuant to 28

23   U.S.C. § 636(b)(1)(B) and Local Rule 302(c).  For the reasons that follow, the court declines to

24   order service of the SAC and instead grants plaintiff leave to file a Third Amended Complaint

25   within thirty (30) days; denies plaintiff's requests for injunctive relief as premature; and

26   recommends the dismissal of defendant J. Clark Kelso from this action.

27   ////

28   ////

                                                   1

1    II.    **Screening of Plaintiff's Complaint**

2           A.    **Legal Standards for Screening Prisoner Civil Rights Complaint**

3           The court is required to screen complaints brought by prisoners seeking relief against a

4    governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a).

5    The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

6    legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

7    that seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §

8    1915A(b)(1), (2). A claim is legally frivolous when it lacks an arguable basis either in law or in

9    fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-

10   28 (9th Cir. 1984).

11          Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement

12   of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

13   notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v.

14   Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

15   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it

16   demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v.

17   Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly at 555). To survive dismissal for failure to

18   state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a

19   claim to relief that is plausible on its face.'" Iqbal at 678 (quoting Twombly at 570).

20          "A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however

21   inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by

22   lawyers.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97,

23   106 (1976) (internal quotation marks omitted)). See also Fed. R. Civ. P. 8(e) ("Pleadings shall be

24   so construed as to do justice."). Additionally, a pro se litigant is entitled to notice of the

25   deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies

26   cannot be cured by amendment. See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

27   ////

28   ////

2

### B. Allegations of the Second Amended Complaint

The SAC is 30 pages in length, names 21 defendants, and challenges plaintiff's medical care at two different correctional institutions. See ECF No. 32. The first 24 pages of the SAC set forth plaintiff's medical history, alleged treatment needs, and the alleged deliberate indifference of plaintiff's several medical providers from approximately 2014 to 2017. The supporting exhibits, which are well organized but exceed 800 pages, include plaintiff's medical records, health care requests and appeals, and correspondence with various medical boards and lawyers.

Plaintiff was previously incarcerated under the authority of CDCR from 2008 to 2011; he was reincarcerated in 2014 and has since remained in CDCR's custody. Plaintiff alleges he has a history of chronic pain due to "multiple fractures in both hands, left wrist, nerve damage, ligament damage, degenerative changes, and mild L4-5 degenerative disc disease (DDD) with spondylosis of the spine." ECF No. 32 at 6 ¶ 26. Plaintiff alleges that from 2008-2011, during his previous period of incarceration, he was designated a "Chronic Pain Management" inmate and received adequate pain medication after it was established that nonsteroidal anti-inflammatory medications (NSAIDs) were ineffective. Id. Plaintiff's effective pain medications included morphine and gabapentin. See ECF No. 32-3 at 194 et seq. (Ex. G).

In 2008, plaintiff was diagnosed with Hepatitis C Virus (HCV) GenoType 1B. ECF No. 32 at 6 ¶ 27. In 2009, a liver biopsy revealed Stage 1 Scarring Fibrosis. Id. Based on CDCR treatment protocol, plaintiff received "Stage 2" HCV treatment, which he alleges is not the most appropriate treatment for his "aggressive" form of HCV. Id.

In late November 2013, while out of custody, plaintiff "suffered a work-related hernia in his right lower abdomen." ECF No. 32 at 6 ¶ 28. Shortly thereafter, plaintiff was booked in the local county jail where he sought treatment for his chronic hernia and pain. Plaintiff received no pain medication and only a hernia belt for his hernia. Plaintiff sought the attention of the San Diego County Superior Court, which requested that the local jail provide plaintiff with adequate medical care. See ECF No. 32-2 at 19-20.

In July 2014, plaintiff was transferred to a CDCR Reception Center in Chino. ECF No. 32 at 7 ¶ 29. His medical history and needs were reviewed by Dr. Daniel (not a defendant), who

determined that plaintiff's HCV rendered it unsafe for plaintiff to take NSAIDs, but did not provide plaintiff with alternative pain medications. Id. Dr. Daniel was able to access and review plaintiff's electronic Unit Health Record (UHR), including plaintiff's prior treatment history at CDCR from 2008 to 2011. Id.

In November 2014, plaintiff was transferred to High Desert State Prison (HDSP), where he was initially evaluated by defendant Dr. Windsor, who said he was unable to access plaintiff's CDCR treatment history. Dr. Windsor prescribed Tylenol to treat plaintiff's pain, which plaintiff alleges was contraindicated by his HCV and ineffective in treating his pain. Id.

On December 19, 2014, plaintiff submitted a CDCR Health Care Request Form (CDCR 7362) ("HCR Form"), seeking treatment for his hernia and chronic pain. ECF No. 32 at 7-8 ¶ 31. Plaintiff was seen by defendant Dr. Abdur-Rahman on January 8, 2015, who allegedly refused to review plaintiff's treatment history. He prescribed a salicylate (an NSAID), rejecting plaintiff's concerns. Dr. Abdur-Rahman noted that plaintiff was "doing fairly well, has a hernia belt," although plaintiff asserts he did not have a belt at that time and was not doing well. Id.

On January 8, 2015, plaintiff filed Health Care Appeal Log No. HDSP HC 15028804, seeking adequate pain medication. ECF No. 32 at 8 ¶ 32; ECF No. 32-3 at 2-11. Plaintiff was interviewed by defendant Dr. Lankford on January 29, 2015, whom plaintiff alleges was inattentive and unresponsive. On February 23, 2015, defendant HDSP Chief Physician and Surgeon Dr. Lee denied the appeal on First Level Review. See ECF No. 32-3 at 6-7. Dr. Lee agreed with the decisions of Dr. Lankford to prescribe Naproxen (an NSAID) for six months, deny plaintiff a prescription for morphine, and deny plaintiff a referral to a Pain Management Specialist. Id.

On March 3, 2015, plaintiff was transferred to California State Prison Corcoran (CSP-COR). On April 16, 2015, an unidentified primary care physician (PCP) prescribed oxcarbazepine (300 mg twice a day) to treat plaintiff's pain, ordered an ultrasound of plaintiff's hernia, and provided plaintiff with an abdominal binder. ECF No. 32-3 at 8-9. On May 3, 2015, defendant Dr. Enenmoh, CSP-COR Chief Medical Executive, partially granted plaintiff's Appeal Log No. HDSP HC 15028804 on Second Level Review. Id.

On August 14, 2015, defendant J. Lewis, Deputy Director for California Correctional Health Care Services (CCHCS) Policy and Risk Management Services, denied plaintiff's appeal (Log No. HDSP HC 15028804) at the Third Level based on a review of plaintiff's comprehensive UHR and recent health care. ECF No. 32-3 at 10-11. Lewis noted that plaintiff was currently enrolled in the Chronic Care Program (CCP), had been referred to the Pain Management Committee (PMC) for evaluation, and had recently received treatment from his PCP on June 19, 2015. Id.

Meanwhile, on March 5, 2015, two days after his transfer to CSP-COR, plaintiff submitted an HCR Form seeking treatment for his left wrist pain and hernia. ECF No. 32 at 9 ¶ 36. Plaintiff was seen by defendant RN Mendivil on March 9, 2015, and by defendant NP Mays on March 12, 2015. Id. ¶¶ 36-7. Dissatisfied with their responses, plaintiff submitted another HCR Form on March 13, 2015. Id. at 10 ¶ 38.

On March 23, 2015, plaintiff filed Health Care Appeal Log No. COR-HC-15058051, seeking treatment for his HCV. Id. at 10-1 ¶ 40; see also ECF No. 32-3 at 12-21. Plaintiff was interviewed by defendant Dr. Beregovskaya on April 7, 2015, who explained that plaintiff's HCV condition did not meet the criteria for treatment based on CDCR guidelines. Id. at 16. The appeal was denied for this reason on May 1, 2015 (on First Level Review) by defendant Dr. McCabe, CSP-COR Chief Physician and Surgeon. Id. The appeal was denied for the same reason on June 26, 2015 (Second Level Review) by defendant Dr. Enenmoh, id. at 17-8, and on October 7, 2015 (Third Level Review) by defendant Lewis, CCHCS Deputy Director, id. at 20-1.

Plaintiff filed a staff complaint against defendant Beregovskaya on May 12, 2015, alleging that defendant made inappropriate comments to plaintiff at his April 7, 2015 interview. ECF No. 32 at 11-2 ¶¶43-4. Review of the staff complaint commenced at Second Level Review with an interview of plaintiff by defendant Dr. McCabe. The complaint was denied at the Second Level, then denied October 2, 2015 on Third Level Review by defendant Lewis.

Meanwhile, on April 16, 2015, plaintiff was seen by defendant Mays, a Nurse Practitioner (NP). Id. ¶ 39; id. at 12 ¶45. Mays addressed plaintiff's complaints of hernia pain but not his wrist or back pain. Mays provided plaintiff with an abdominal binder and education material but

did not provide any additional pain medication. Mays ordered an ultrasound but retracted it on April 20, 2015. ECF No. 32 at 12 ¶ 45. Plaintiff sought additional medical attention for his hernia without relief. Id. at ¶¶ 46-7.

On April 20 and 27, 2015, plaintiff submitted two separate HCR Forms seeking treatment for his "severe hernia distress." Id. ¶ 48; see also id. at ¶ 50 (plaintiff repeatedly requested treatment in April and May 2015). Plaintiff was seen by defendant Mendivil, a Registered Nurse (RN), on April 28, 2015, who told plaintiff that his difficulty in having a bowel movement was not due to his hernia but instead because he was "full of shit." Id.

Plaintiff alleges that thereafter defendant Mendivil fraudulently generated two HCR Forms in plaintiff's name, dated May 4 and 11, 2015, and "continued to minimize plaintiff's distress and symptoms in her musculoskeletal complaint forms." Id. ¶ 49. Plaintiff contends that this conduct was retaliatory against plaintiff for utilizing the health care appeal process. On May 12, 2015, plaintiff was seen by defendant Dr. Gill who allegedly minimized plaintiff's persistent hernia symptoms as "occasional discomfort." Id. at 14 ¶ 51. Plaintiff contends that the minimization of his medical needs by defendants Gill, Beregovskaya, Mendivil and Mays, was retaliatory and done in concert. Id.

On May 17, 2015, plaintiff filed Health Care Appeal Log No. COR-HC-15058389, seeking an ultrasound of his hernia and surgery. Id. ¶ 52; ECF No. 32-3 at 22-32. Plaintiff was interviewed by defendant Mays on June 5, 2015. Mays noted that plaintiff had been medically evaluated on May 16, 2015, was scheduled for another appointment on June 17, 2015, and that a Physicians Request for Services (RFS/CDC 7243) had been submitted for consultation with a General Surgeon. On these grounds, the appeal was partially granted on First Level Review by defendant Dr. Enenmoh. ECF No. 32-3 at 26-7. Plaintiff alleges that defendant Mays' assessment was disingenuous because she had rescinded her request for an ultrasound on April 20, 2015, and requested a surgical evaluation without an ultrasound knowing that the evaluation would then be denied. ECF No. 32 at 14-5 ¶¶ 52-3.

////

////

Health Care Appeal Log No. COR-HC-15058389 was partially granted on Second Level Review, on August 20, 2015, by defendant Dr. McCabe, on the following grounds, ECF No. 32-3 at 28:

> You were seen again by your provider on 7/9/2015 for your right inguinal hernia. It was at this visit the provider noted a very small outpouching in the right inguinal area which was easily reducible at the time. The provider noted you were to continue to use the hernia truss and continue with your NSAIDS regimen for pain. On 7/27/2015 you were seen again for your hernia. The directions from the provider were to continue with the hernia truss and NSAIDS for pain, no heavy lifting over 19 pounds, and/or strenuous exercise. There has not been an indication for surgery at this time.

On November 18, 2015, the appeal was denied at Third Level Review by defendant Lewis. ECF No. 32-3 at 30-1; ECF No. 32 at 16 ¶ 55. The decision noted in pertinent part that, upon examination of plaintiff on September 2, 2015, his PCP concluded that "no surgical intervention was medically necessary because your hernia was small and easily reducible" with continued use of the inguinal support and NSAIDS. Id. at 30. Plaintiff subsequently saw his PCP on September 10 and 16, and October 22, 2015; on November 3, 2015, plaintiff apparently refused a chronic care appointment but continued to be enrolled in the Chronic Care Program. Id.

Plaintiff contends that defendants Mays and Beregovskaya conspired to retaliate against plaintiff for utilizing the health care appeals process and filing a staff complaint against Beregovskaya. Plaintiff alleges that their retaliatory acts included making plaintiff wait in filthy clinic holding cells for extended periods of time, and Mays' rescission of her request that plaintiff have an ultrasound and requesting that plaintiff be surgically evaluated without an ultrasound. ECF No. 32 at 14-5 ¶ 53.

On May 25, 2015, plaintiff submitted Health Care Appeal Log No. COR-HC-15058429, seeking treatment ("need to see Doctor, Specialist, Medication") for his left wrist and right lower back. ECF No. 32-3 at 33. Plaintiff alleged that he'd "put in Medical Requests since March and have never spoken to a Dr. yet about this issue. I'm in constant pain, need this issued addressed. Please stop ignoring my situation, help." Id. Plaintiff asserted that he needed "physical therapy, braces, shoes, medication" and review of his "MRI, X-ray and medication history." Id. Defendant Mays interviewed plaintiff on June 19, 2015. Id. at 40. Plaintiff alleges that Mays was

dismissive and incorrectly noted plaintiff had previously rejected surgery for his wrist; rather, plaintiff asserts that the surgery was cancelled, apparently in 2011, because plaintiff was then too close to parole.  ECF No. 32 at 16 ¶ 56; ECF No. 32-2 at 238.

On July 6, 2015, defendant Dr. McCabe partially granted Health Care Appeal Log No. COR-HC-15058429 on First Level Review, on the ground that defendant Mays submitted plaintiff's name to the Pain Management Committee (PMC) for evaluation and treatment of his chronic left wrist and lower back pain and his requests for physical therapy, braces and shoes. ECF No. 32-3 at 40.  Plaintiff's request for review of his medications was found to duplicate Appeal Log No. HDSP HC 15028804, and not further addressed in this appeal.  Id. at 40-1.  On August 19, 2015, plaintiff was examined by PA Sisodia (not a defendant) for his complaints of wrist, back and hernia pain.  ECF No. 32-2 at 246.  On August 21, 2015, defendant Dr. Enenmoh found that Appeal Log No. COR-HC-15058429 remained partially granted on Second Level Review because plaintiff's name remained on the list for review by the PMC.  ECF No. 32-3 at 42-3.

Thereafter PA Sisodia ordered x-rays of plaintiff's wrist, and prescribed additional medications to treat plaintiff's pain and hernia symptoms.  ECF No. 32-2 at 246-47.  The x-ray, taken September 8, 2015, was evaluated by defendant Mays on September 10, 2015, who referred plaintiff for an urgent orthopedic consultation.  Id. at 248-49.  Plaintiff alleges that, nevertheless, Mays denied plaintiff pain medication.  ECF No. 32 at 16 ¶¶ 57, 59.  Review of Mays' medical notes indicates that on September 16, 2015, plaintiff would continue taking NSAIDS and gabapentin; on October 13, 2015, plaintiff refused to take oxcarbazepine because it did not reduce his pain; on October 22, 2015, plaintiff requested opiates but was refused.  ECF No. 32-2 at 250-53.  On November 18, 2015, Appeal Log No. COR-HC-15058429 was denied on Third Level Review by defendant Lewis, on the ground that plaintiff's "medical condition has been evaluated and you are receiving treatment deemed medically necessary."  Id. at 44-6; see also id. at 44-5 (listing plaintiff's treatment from June 2015 to November 2015, including surgery to plaintiff's left wrist on November 5, 2015).

Defendant Dr. Smith, an orthopedic surgeon, performed surgery on plaintiff's left wrist on

November 5, 2015. Plaintiff alleges that Dr. Smith removed more bone than originally estimated or required for proper treatment, leaving plaintiff's wrist permanently disabled with pain, swelling, and limited range of motion. Plaintiff is left-hand dominant and previously worked as a carpenter. ECF No. 32 at 17-8 ¶¶ 58-60.

Defendant Dr. Gill saw plaintiff on December 24, 2015 for left wrist pain. Plaintiff alleges that Dr. Gill "was dismissive and refused to follow defendant [Dr.] Smith's Pain Management recommendation," said he would not renew plaintiff's pain medication, and refused to issue a waist chrono to protect plaintiff's wrist when restrained. ECF No. 32 at 18 ¶ 61; ECF No. 32-2 at 264-66.

On January 11 and February 2, 2016, plaintiff had telemedicine appointments with defendant Dr. Mansour who, allegedly, failed to treat plaintiff's complaints of significant left-wrist and hernia pain, failed to follow through on his statement that he would provide plaintiff with a waist chain chrono, and made significant misstatements in his treatment notes, appearing to be scripted. ECF No. 32 at 18-9 ¶ 62. Plaintiff's dissatisfaction with Dr. Mansour's care are reflected in numerous HCR forms submitted during this period. Id.

On March 25, 2016, plaintiff was seen by defendant Dr. Smith who made specific pain management recommendations that CSP-COR physicians failed to follow. ECF No. 32 at 19 ¶ 63. On April 13, 2016, plaintiff was seen by defendant Dr. Clark who stopped plaintiff's pain medication with a false notation that plaintiff didn't think "the morphine was very helpful." Id. at 20 ¶ 64.

Plaintiff alleges that defendant McCabe, CSP-COR Chief Physician and Surgeon, retaliated against plaintiff for the exercise of his First Amendment right to submit health care appeals. Id. at 20-1 ¶ 65. This allegation is based on McCabe "denying" all 12 of plaintiff's appeals and/or "approving" the misconduct of others. Moreover, on March 16, 2016, McCabe issued a stop order on plaintiff's pain medications, only 15 days after plaintiff filed a complaint against McCabe with the California Medical Board. Id.

Similarly, plaintiff alleges that defendant Bell, a CSP-COR Chief Executive Officer (CEO), reviewed 6 of plaintiff's health care appeals at the Second Level; defendant Young, also a

CSP-COR CEO, reviewed 3 of plaintiff's Appeals at the Second Level, "approving of all defendants Medical Judgement and treatment of Plaintiff that ultimately caused substantial wanton infliction of pain and distress on a routine[] basis;" that defendant Patten, CSP-COR Appeals Coordinator, has been responsible for the delayed and inadequate processing of plaintiff's health care appeals since June 2015, involving "suspected retaliatory tactics against the Plaintiff;" that defendant Ramadan, a CSP-COR PCP in charge of plaintiff's health care from November 2016 through August 2017, allegedly provided "inadequate medical and medication treatment" and "routinely lied to the plaintiff by misleading him on multiple occasions on who to see for pain management;" and that defendant Akanno, another CSP-COR PCP, allegedly refused to follow Dr. Smith's pain management recommendations and falsified his treatment notes, causing the "unnecessary wanton infliction of pain." Id. at 21-4 ¶¶ 67-71.

Finally, plaintiff alleges that he "still has not received Hepatitis C treatment for a life threatening disease he's had 23 years and poses an unreasonable risk of serious damage to his future health and is currently causing liver damage." ECF No. 32 at 20 ¶ 66.

### C.      Plaintiff's Legal Claims and Requested Relief

The SAC sets forth three broadly-framed "causes of actions:" (1) Eighth Amendment "failure to act and intervene" and "failure to adequately supervise" claims against defendants Scott Kernan (former CDCR Secretary) and D. Davey (former CSP-COR Warden); (2) Eighth Amendment "failure to act and intervene" and "failure to adequately supervise" claims against defendants J. Clark Kelso (court-appointed Federal Receiver monitoring CDCR health care services) and J. Lewis (Deputy Director for CCHCS Policy and Risk Management Services); and (3) Eighth Amendment medical deliberate indifference claims and state law medical malpractice claims against defendants Lee, Enenmoh, McCabe, Lankford, Windsor, Beregovskaya, Ramadan, Gill, Mays, Young, Smith, Abdur-Rahman, Akanno, Bell, Patton, Mendivil and E. Clark. ECF No. 32 at 25-29.

Plaintiff seeks compensatory and punitive damages, as well as preliminary and permanent injunctive relief "to provide plaintiff with adequate and reasonable medical care that is necessary

////

to alleviate his severe pain, treat his HCV, treat his hernia as well as his back problems and left wrist." Id. at 29-30.

### D.    Analysis

The structure of the SAC – twenty-two pages of detailed and wide-ranging factual allegations, hundreds of pages of exhibits, and broadly-framed "causes of action" that purport to globally incorporate facts by reference – makes screening nearly impossible. The task of identifying pertinent factual allegations against each defendant that may support potentially cognizable legal claims is the responsibility of plaintiff, not the court or defendants.

"Shotgun" or "kitchen sink" complaints, such as the instant complaint, are strongly disfavored. "The plaintiff who files a kitchen-sink complaint shifts onto the defendant and the court the burden of identifying the plaintiff's genuine claims and determining which of those claims might have legal support. . . . It is the plaintiff['s] burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." Gurman v. Metro Housing & Redevelopment Authority, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011).

For these reasons, and the reasons set forth below, the SAC must be dismissed with leave to file a Third Amended Complaint (TAC). To the limited extent the court has been able to identify claims against specific defendants, they are addressed below. Otherwise, the court informs plaintiff of the general requirements and legal standards for stating potentially cognizable claims in a TAC.

### 1.    First and Second Causes of Action Premised on Health Care Appeals

In his first and second causes of action, plaintiff attempts to state Eighth Amendment claims for deliberate indifference to his serious medical needs based on the review and/or denial of his health care appeals by four administrative officials. The first cause of action alleges violations of plaintiff's Eighth Amendment rights by defendant Kernan (former CDCR Secretary) and defendant Davey (former CSP-COR Warden), who allegedly "failed to act or intervene on plaintiff's behalf with regard to his appeal issues at the Warden's Second Level of Appeal Review

11

and the Director's Third Level of Appeal Review[.]" ECF No. 32 at 25-6. The second cause of action alleges that defendants J. Clark Kelso (court-appointed Federal Receiver) and J. Lewis (Deputy Director for CCHCS Policy and Risk Management Services) "failed to act or intervene" despite being "informed by both letter and via the appeal process at the Third Level of Medical Appeals Review" of plaintiff's allegedly unconstitutional medical care. Id. at 26-7.

The denial of an administrative appeal does not in itself support a cognizable claim.[1] However, allegations that a correctional defendant failed to adequately respond to a prisoner's serious medical needs, after becoming aware of those needs through the appeals process, may state a cognizable Eighth Amendment claim. See Jett v. Penner, 439 F.3d 1091, 1097-98 (9th Cir. 2006) (prison administrators may be "liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help"); Payan v. Tate, 2017 WL 880422, at *5, 2017 U.S. Dist. LEXIS 31496, at *13-4 (E.D. Cal. Mar. 6, 2017) (Case No. 1:13-cv-0807 LJO BAM PC) ("Plaintiff has not merely complained that the Defendants reviewed or denied his inmate appeal. Rather, plaintiff has alleged that he put the reviewing defendants on notice through the inmate appeals process, establishing knowledge, that Plaintiff had ongoing serious medical conditions and was not receiving proper care."), report and recommendation adopted, 2017 WL 1214015, 2017 U.S. Dist. LEXIS 49613 (E.D. Cal. Mar. 31, 2017).

Thus, the requirements for stating a cognizable Eighth Amendment claim for deliberate indifference to plaintiff's serious medical needs within the context of the administrative appeal process are the same as those outside the appeals context: plaintiff must plausibly allege how defendant had personal knowledge of plaintiff's serious medical needs, and how defendant's response to those needs, or failure to act, violated plaintiff's right to constitutionally adequate medical care.

---

[1] A challenge to a correctional official's handling or processing of an inmate appeal does not state a due process claim. "[P]rison officials are not required to process inmate grievances in a specific way or to respond to them in a favorable manner. Because there is no right to any particular grievance process, plaintiff cannot state a cognizable civil rights claim for a violation of his due process rights based on allegations that prison officials ignored or failed to properly process his inmate grievances." Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).

12

The legal standards for stating a medical deliberate indifference claim, and the requirements for connecting or "linking" each defendant with pertinent factual allegations, are provided in greater detail below. Plaintiff's failure to meet these legal standards and linkage requirements in his first and second causes of action requires the dismissal of these putative claims with leave to amend.

### 2. Third Cause of Action Premised on Medical Care

In his third cause of action, plaintiff broadly contends that defendants Lee, Enenmoh, McCabe, Lankford, Windsor, Beregovskaya, Ramadan, Gill, Mays, Young, Smith, Abdur-Rahman, Akanno, Bell, Patton, Mendivil and E. Clark were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment and that their conduct constituted medical malpractice under California law. ECF No. 32 at 25-9.

This cause of action, like plaintiff's first and second causes of action, fails to specify and connect the challenged conduct of each defendant with the alleged violation of plaintiff's legal rights. Although the SAC makes many factual allegations, supported by an extensive factual record, the allegations do not specifically explain when, how and why each defendant's challenged conduct constituted deliberate indifference to plaintiff's serious medical needs.

Due to the absence of this specificity and linkage, plaintiff's third cause of action must also be dismissed with leave to amend. The legal standards for stating a medical deliberate indifference claim and a state malpractice claim in a TAC are set forth below.

### 3. Defendants

#### a. Dismissal of J. Clark Kelso, Court-Appointed Receiver

In his second cause of action, plaintiff alleges, inter alia, that defendant J. Clark Kelso, the court-appointed Federal Receiver overseeing CDCR's Correctional Health Care Services, "failed to act or intervene" in plaintiff's medical care despite being "informed by both letter and via the appeals process" of the alleged violation of plaintiff's Eighth Amendment rights. ECF No. 32 at 26-7. Kelso was appointed in 2008, and accorded "[a]ll powers, privileges, and responsibilities . . . as set forth in the Court's February 14, 2006 Order Appointing Receiver"). See Plata v. Schwarzenegger, Case No. 3:01-1351 JST (N.D. Cal. Jan. 23, 2008) (ECF No. 1063) (citing ECF

No. 473) (class action challenging constitutional adequacy of CDCR health care services).

"Under federal law, court-appointed 'receivers are court officers who share the immunity awarded to judges.'" Alta Gold Mining Co. v. Aero-Nautical Leasing Corp., 656 Fed. Appx. 316, 318 (9th Cir. 2016) (quoting New Alaska Dev. Corp. v. Guetschow, 869 F.2d 1298, 1303 (9th Cir. 1989)). Judicial immunities extend to immunity from suit. Pierson v. Ray, 286 U.S. 547, 553-54 (1967). It has routinely been held that Kelso is entitled to quasi-judicial immunity and, on this basis, dismissal from suit in prisoner civil rights cases. See Patterson v. Kelso, 698 Fed. Appx. 393, 394 (9th Cir. 2017) (citing Stump v. Sparkman, 435 U.S. 349, 355-56 (1978) (explaining doctrine of judicial immunity); and Mosher v. Saalfeld, 589 F.2d 438, 442 (9th Cir. 1978) (judicial immunity extends to court-appointed receivers)); accord, Mwasi v. Corcoran State Prison, 2016 WL 5210588, at *4-5, 2016 U.S. Dist. LEXIS 67611 (E.D. Cal. May 20, 2016); Griffin v. Kelso, 2011 WL 3583457, at *2-4, 2011 U.S. Dist. LEXIS 90475 (E.D. Cal. Aug. 15, 2011).

There are two exceptions to judicial immunity: first, where the judge's action is "not taken in the judge's judicial capacity;" second, where the judge's action, "though judicial in nature, is taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11-2 (1991) (citations omitted). Plaintiff does not and could not plausibly allege that Kelso acted outside the scope of his jurisdiction or responsibilities, only that he did not attempt to generally intervene in plaintiff's medical care.[2] For these reasons, the undersigned will recommend that J. Clark Kelso be dismissed from this action with prejudice.

////

////

---

[2] Plaintiff alleges that defendant Lewis denied plaintiff's appeals at the Third Level "for" defendant Kelso. See ECF No. 32 at 9 ¶35, id. at 11 ¶41, id. at 12 ¶44. Even assuming that defendant Lewis acted on behalf of defendant Kelso, which is not apparent from the record, Third Level Review of plaintiff's health care appeals was within the scope of Lewis' official duties and therefore within the scope of Kelso's quasi-judicial responsibilities. Plaintiff also alleges that Kelso failed to respond to plaintiff's personal letters. See e.g. ECF No. 32 at 9 ¶35; ECF No. 32-4 at 40-1. These letters, like the SAC, are wide-ranging and fail to demonstrate that plaintiff informed Kelso of a specific serious medical need which he ignored to plaintiff's detriment.

**b.     Substitution of CDCR Secretary Diaz in his Official Capacity**

**Retention of Former Secretary Kernan in his Personal Capacity**

As a threshold matter, the court substitutes recently appointed CDCR Secretary Ralph Diaz, in his official capacity, for defendant former CDCR Secretary Scott Kernan.  See Fed. R. Civ. P. 25(d) (automatic substitution of successor to public official sued in his or her official capacity); see also Hoptowit v. Spellman, 753 F.2d 779, 781-2 (9th Cir. 1985).  Secretary Diaz is an appropriate defendant in his official capacity because he would be able to respond to an order granting plaintiff injunctive relief.  "A plaintiff seeking injunctive relief against the State is not required to allege a named official's personal involvement in the acts or omissions constituting the alleged constitutional violation."  Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1127 (9th Cir. 2013) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991), and Kentucky v. Graham, 473 U.S. 159, 166 (1985)).  Due to his recent appointment, there appears to be no basis for plaintiff to allege that Secretary Diaz was personally involved in the alleged deprivation of plaintiff's constitutional rights.  See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (a supervisor may be found liable under Section 1983 only if he personally participated in the challenged conduct or knew about, but failed to prevent, the challenged conduct).

The court will not, at this time, recommend the dismissal of former CDCR Secretary Kernan in his personal capacity.  As earlier noted, a correctional defendant may be found deliberately indifferent under the Eighth Amendment for failing to adequately respond to a prisoner's serious medical needs after becoming aware of those needs through the appeals process.  Jett, 439 F.3d at 1097-98.  Thus, "[a] supervisor may be liable if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (citation omitted).  Therefore, for present purposes, Kernan shall remain a defendant in this action in his personal capacity to permit plaintiff the opportunity to attempt to state a cognizable claim against him.

////

////

1        **c.        Retention of Defendants Lewis & Davey with Leave to Amend**

2        Defendants Lewis and Davey are named in plaintiff's first and second causes of action,

3    based on their respective roles in reviewing plaintiff's health care appeals.  Although the SAC, as

4    currently framed, does not state a cognizable claim against either defendant on these grounds,

5    plaintiff may reexamine his allegations against these defendants in a TAC subject to the standards

6    set forth in Jett, 439 F.3d at 1097-98, and Hansen, 885 F.2d at 646, as noted above.

7        **III.        Legal Standards and Linkage Requirements for Stating Cognizable Claims**

8        The following requirements and standards must be satisfied for a complaint to pass

9    screening and be served on defendants.  Plaintiff should be guided by these principles in the

10   preparation of his TAC.

11       **A.        Requirement of Linkage Between Defendants and Claims**

12       To state a cognizable claim against a specific defendant, plaintiff must expressly "link" or

13   "connect" the factual allegations describing each defendant's challenged conduct that reflects the

14   elements of each asserted legal claim.  "A person 'subjects' another to the deprivation of a

15   constitutional right, within the meaning of §1983, if he does an affirmative act, participates in

16   another's affirmative acts or omits to perform an act which he is legally required to do that causes

17   the deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.

18   1978); see also Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) ("The inquiry into causation

19   must be individualized and focus on the duties and responsibilities of each individual defendant

20   whose acts or omissions are alleged to have caused a constitutional deprivation.").  There can be

21   no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a

22   specific defendant's actions and the claimed constitutional deprivation.  Rizzo v. Goode, 423 U.S.

23   362, 371 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson, 588 F.2d at 743.

24       In the present case, for example, plaintiff's first and second causes of action generally

25   allege that a given defendant "failed to act and intervene" or was "deliberately indifferent to

26   plaintiff's medical needs," etc.  Because there are so many defendants in this action, and because

27   plaintiff's allegations encompass several years, plaintiff must inform the court of the specific

28   conduct he is challenging for each defendant.

### B. Legal Standards for Stating a Medical Deliberate Indifference Claim

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (internal citations, punctuation and quotation marks omitted). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

"In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong ... is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

To state a claim for deliberate indifference to serious medical needs, a prisoner must allege that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

### C. Legal Standards for Stating a State Medical Malpractice Claim

Plaintiff generally alleges a state medical malpractice claim against each of the defendants named in his third cause of action; neither this cause of action nor the general factual allegations

////

of the SAC clearly identify and articulate a cognizable malpractice claim.  Plaintiff is informed of the following.

In California, to state a medical malpractice claim, the plaintiff must plausibly allege: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence."  Hanson v. Grode (1999) 76 Cal. App. 4th 601, 606 (citations and internal quotation marks omitted).

Federal courts do not have jurisdiction over state law claims except pursuant to the court's supplemental jurisdiction.  See 28 U.S.C. § 1367(a) ("district courts shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").  Supplemental or "[p]endent jurisdiction over state claims exists when the federal claim is sufficiently substantial to confer federal jurisdiction, and there is a common nucleus of operative fact between the state and federal claims."  Brady v. Brown, 51 F.3d 810, 816 (9th Cir. 1995) (citation and internal quotation marks omitted).  However, district courts may decline to exercise supplemental jurisdiction over a claim, 28 U.S.C. § 1367(c), and the Supreme Court has cautioned that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well."  United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966).

For these reasons, if plaintiff's TAC fails to state a cognizable federal claim, the court may dismiss plaintiff's state law claims without prejudice to their pursuit in the state courts.

**D.     Legal Standards for Stating a Retaliation Claim**

Plaintiff's vaguely stated retaliation claims[3] do not satisfy applicable legal standards.  The Ninth Circuit Court of Appeals treats a prisoner's right to file a prison grievance as a

---

[3]  Plaintiff alleges, for example, that in retaliation for plaintiff's use of the health care appeals process, various defendants made misstatements or inappropriate comments, failed to review his treatment record, failed to or cancelled certain referrals, were dismissive or minimized plaintiff's medical needs, lied or misstated relevant facts, and held plaintiff in filthy holding cells for extended periods of time.

constitutionally protected First Amendment right.  Brodheim v. Cry, 484 F.3d 1262, 1269 (9th Cir. 2009).  Filing administrative grievances and initiating litigation are constitutionally protected activities, and it is impermissible for prison officials to retaliate against prisoners for engaging in these activities.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005); see also Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011) (prisoners retain First Amendment rights not inconsistent with their prisoner status or penological objectives, including the right to file inmate appeals and the right to pursue civil rights litigation).

Plaintiff need not prove that the alleged retaliatory action, in itself, violated a constitutional right.  Pratt v. Rowland, 65 F.3d 802, 806 (1995) (to prevail on a retaliation claim, plaintiff need not "establish an independent constitutional interest" was violated); see also Hines v. Gomez, 108 F.3d 265, 268 (9th Cir.1997) (upholding jury determination of retaliation based on filing of a false rules violation report); Rizzo v. Dawson, 778 F.2d 527, 531(transfer of prisoner to a different prison constituted adverse action for purposes of retaliation claim).  Rather, the interest asserted in a retaliation claim is the right to be free of conditions that would not have been imposed but for the alleged retaliatory motive.  However, not every allegedly adverse action will support a retaliation claim.  See e.g. Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000) (retaliation claim cannot rest on "the logical fallacy of post hoc, ergo propter hoc, literally, 'after this, therefore because of this'") (citation omitted).

To sustain a retaliation claim, plaintiff must plead facts that support a reasonable inference that plaintiff's exercise of his constitutionally protected rights was the "substantial" or "motivating" factor behind the defendant's challenged conduct.  See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989) (citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 419 U.S. 274, 287 (1977).  Plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the challenged conduct.  Pratt, 65 F.3d at 806 (citing Rizzo, 778 F.2d at 532).  Mere allegations of retaliatory motive or conduct will not suffice.  A prisoner must "allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  Frazier v. Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990).  Verbal harassment alone is insufficient to state a claim.  See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).

1   Even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not

2   the equivalent of doing the act itself.  See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

3   **IV.      Leave to File a Third Amended Complaint**

4   For the foregoing reasons, plaintiff's SAC is subject to dismissal pursuant to 28 U.S.C. §

5   1915A.  The court will grant plaintiff leave to file a Third Amended Complaint (TAC) within

6   thirty (30) days after service of this order.

7   In a TAC, plaintiff may attempt to state cognizable Eighth and First Amendment claims

8   against one or more of the defendants, subject to the legal standards and linkage requirements set

9   forth above.  Any new claim must allege an actual connection or link between the challenged

10  conduct of a specific defendant and the alleged violation of plaintiff's constitutional rights, as set

11  forth above.  See Johnson, 588 F.2d at 743; Leer, 844 F.2d at 633.

12  The TAC must be on the form provided, labeled "Third Amended Complaint," and

13  provide the case number assigned this case.  The TAC must be complete in itself without

14  reference to the SAC.  See Local Rule 220; Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).

15  ***Plaintiff should attach no further exhibits to the TAC; the court will direct the Clerk of Court***

16  ***to electronically attach to the TAC the 800 pages of exhibits currently attached to the SAC.***

17  The TAC will be screened by the court pursuant to 28 U.S.C. § 1915A.  Failure to timely

18  file a TAC will result in a recommendation that this action be dismissed without prejudice.

19  **V.       Additional Matters**

20  Pending the screening of plaintiff's SAC, plaintiff filed two motions for a preliminary

21  injunction/temporary restraining order, ECF Nos. 25 & 34; the latter includes a motion for

22  summary judgment, ECF No. 34; plaintiff also filed a "motion for order on pleadings," ECF No.

23  41.  In the absence of a complaint containing cognizable claims, each of these motions is

24  premature and will be denied without prejudice on that basis.

25  **VI.      Summary for Pro Se Plaintiff**

26  The court has screened your Second Amended Complaint (SAC) and finds that it fails to

27  state a cognizable claim, primarily because it is in "kitchen sink" form and fails to specifically

28  allege how each individual defendant was deliberately indifferent to your serious medical needs

or retaliated against you. The court has provided you guidance in stating cognizable Eighth and First Amendment claims, and granted you leave to file a Third Amended Complaint (TAC) within thirty (30) days. The TAC must identify each legal claim against each defendant, and identify the specific conduct that allegedly resulted in a deprivation of your constitutional rights.

The magistrate judge recommends the dismissal of defendant J. Clark Kelso based on his quasi-judicial immunity. All other named defendants may remain in this action for the time being. However, review of the legal standards and linkage requirements set forth herein may persuade you that only some of the remaining defendants should be named in your TAC. The court substitutes current CDCR Secretary Diaz for former Secretary Kernan.

## VII. Conclusion

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's Second Amended Complaint (SAC), ECF No. 32, shall not be served. Plaintiff is granted leave to file a Third Amended Complaint (TAC) within thirty (30) days after service of this order, subject to the requirements and legal standards set forth above.

2. Current CDCR Secretary Ralph Diaz is substituted for former CDCR Secretary Ralph Kernan as a defendant in his official capacity; Kernan shall remain a defendant in his personal capacity.

3. Plaintiff's motions for preliminary and permanent injunctive relief, summary judgment and judgment on the pleadings, ECF Nos. 25, 34 and 41, are denied without prejudice as premature.

4. The Clerk of Court is directed to send plaintiff, together with a copy of this order, a copy of the form complaint used by prisoners in this district to pursue a civil rights action under 42 U.S.C. § 1983.

5. Failure to timely file a TAC will result in a recommendation that this action be dismissed without prejudice.

Additionally, IT IS HEREBY RECOMMENDED that defendant J. Clark Kelso be dismissed from this action with prejudice.

////

1    These findings and recommendations are submitted to the United States District Judge
2    assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one (21)
3    days after being served with these findings and recommendations, plaintiff may file written
4    objections with the court.  Such document should be captioned "Objections to Magistrate Judge's
5    Findings and Recommendations."  Plaintiff is advised that failure to file objections within the
6    specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951
7    F.2d 1153 (9th Cir. 1991).

8    DATED: February 26, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE