1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MATTHEW M. DENNIS,                         No.  2:16-cv-0542 DAD AC P

12                 Plaintiff,

13          v.                                   ORDER AND FINDINGS &
                                                 RECOMMENDATIONS
14    SCOTT KERNAN, et al.,

15                 Defendants.

16

17          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42

18    U.S.C. § 1983.  Currently before the court are the parties' cross-motions for summary judgment.

19    ECF Nos. 149, 211.

20    I.    Procedural History

21          The procedural history of this case is long and complex and will be recited only as

22    relevant to the pending motions.

23          The case proceeds on the third amended complaint.  ECF No. 45.  On screening, the court

24    found that plaintiff had stated cognizable Eighth Amendment claims against defendants Mays and

25    Phui and ordered service of the complaint.  ECF No. 51 at 9-10, 17-19.  Service was also found to

26    be appropriate on then California Department of Corrections and Rehabilitation (CDCR)

27    Secretary Diaz in his official capacity only for purposes of injunctive relief.  Id. at 4.  All other

28    defendants were dismissed.  Id. at 4-17, 19-21, 28 (findings and recommendations); ECF No. 67

                                                1

1    (order adopting findings and recommendations in full).  Kathleen Allison, in her official capacity,

2    was later substituted for defendant Diaz.  ECF No. 141 at 10.

3        After the close of discovery, Mays, Allison, and Phui moved for summary judgment.  ECF

4    Nos. 149, 158.  Plaintiff then moved to voluntarily dismissed Phui (ECF No. 168); that motion

5    was granted and Phui's motion for summary judgment was denied as moot[1] (ECF No. 177 at 8).

6    Plaintiff filed a response to Mays and Allison's motion for summary judgment that was captioned

7    as a cross-motion.  ECF No. 171.  Because the cross-motion  was untimely, the filing was

8    construed as an opposition to the motion for summary judgment.  ECF No. 177 at 5, 9.

9    Defendants' opposition to the cross-motion (ECF No. 176) was disregarded as untimely, both as

10   an opposition to the cross-motion and as a reply in support of their motion for summary

11   judgment.  ECF No. 177 at 5 n.3.  Defendants were later granted leave to file an untimely reply.

12   ECF No. 184.  Defendants were required to resubmit their exhibits consisting of plaintiff's

13   medical records and grievances (ECF No. 177 at 5-8), which they did along with an amended

14   declaration by counsel (ECF No. 186).  For reasons previously addressed, paragraph 9 of

15   counsel's amended declaration has been disregarded.  See ECF No. 202 at 2-3, 5.

16       Plaintiff was ultimately granted leave to file an untimely motion for summary judgment

17   (ECF No. 207) and he then moved for summary judgment against Mays and Allison (ECF No.

18   211).  Defendants oppose the motion.  ECF No. 222.  Also pending are plaintiff's motions for an

19   extension of time to file his reply (ECF Nos. 233, 237), for clarification (ECF No. 234), and to

20   seal (ECF No. 239).  The motions for extension of time will be granted and plaintiff's reply is

21   deemed timely.  All other pending motions will be addressed below.

22       II.     Plaintiff's Allegations

23       The third amended complaint alleges that defendant Mays violated plaintiff's rights under

24   the Eighth Amendment and state tort law.  Plaintiff alleges that from March to November 2015,

25   Mays, a nurse practitioner, was his treating medical provider.  ECF No. 45 at 12.  During that

---

[1] To the extent the motion also sought summary judgment as to Allison, it was denied as
duplicative because Allison had also moved for summary judgment in conjunction with Mays,
and the portions of each motion as they pertained to Allison were identical.  ECF No. 177 at 4, 9
& n.2.

1  time, plaintiff had eleven encounters with Mays related to his chronic pain from his left wrist,

2  degenerative disc disease, and hernia.  Id.  During this time Mays was dismissive of plaintiff's

3  complaints and refused to order diagnostic tests or treat his wrist pain and hernia.  Id. at 12-13.

4  At plaintiff's first appointment with Mays, she refused to address his complaints of wrist pain,

5  instead telling him it was a hepatitis C (HCV) follow-up and that she would only address one

6  issue per visit.  Id. at 12.  It was eventually discovered that plaintiff had two hernias and an

7  advanced, full collapse of his left wrist.  Id. at 13.  Defendant Allison was named for the purposes

8  of providing injunctive relief only.  Id. at 5.  Plaintiff seeks injunctive relief in the form of

9  medical treatment and transfer to a medical facility.  Id. at 31.

10      III.    Defendants' Motion for Summary Judgment

11          A.    Defendants' Arguments

12      Defendants argue that Mays was not deliberately indifferent to plaintiff's serious medical

13  needs because she provided appropriate care and treatment for his hernia and wrist, and plaintiff

14  did not meet the criteria for HCV treatment during the time she was treating plaintiff.  ECF No.

15  151 at 14-23, 26-28.  Alternatively, they argue that Mays is entitled to qualified immunity.  Id. at

16  23-25.  Defendants argue that summary judgment should be granted for Allison because there are

17  no grounds for liability against her, and any policies related to plaintiff's request for injunctive

18  relief would be outside of her authority because medical policies and procedures are governed by

19  California Correctional Health Care Services (CCHCS), not the CDCR.

20          B.    Plaintiff's Response

21      "Pro se litigants must follow the same rules of procedure that govern other litigants."

22  King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987) (citation omitted), overruled on other grounds,

23  Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).  However, it is well-

24  established that district courts are to "construe liberally motion papers and pleadings filed by *pro*

25  *se* inmates and should avoid applying summary judgment rules strictly."  Thomas v. Ponder, 611

26  F.3d 1144, 1150 (9th Cir. 2010).  The unrepresented prisoner's choice to proceed without counsel

27  "is less than voluntary" and they are subject to "the handicaps . . . detention necessarily imposes

28  upon a litigant," such as "limited access to legal materials" as well as "sources of proof."

1   Jacobsen v. Filler, 790 F.2d 1362, 1364 n.4 (9th Cir. 1986) (alteration in original) (citations and

2   internal quotation marks omitted).  Inmate litigants, therefore, should not be held to a standard of

3   "strict literalness" with respect to the requirements of the summary judgment rule.  Id. (citation

4   omitted).

5          Accordingly, though plaintiff has largely complied with the rules of procedure, the court

6   will consider the record before it in its entirety.  However, only those assertions in the opposition

7   which have evidentiary support in the record will be considered.

8          Plaintiff opposes defendants' motion and argues that Mays delayed and denied treatment

9   for his wrist, hernia, and HCV and is not entitled to qualified immunity, and that defendant

10  Allison should not be dismissed because she is necessary to obtaining his requested injunctive

11  relief.  ECF No. 171 at 5-69.

12      IV.    Plaintiff's Motion for Summary Judgment

13             A.    Plaintiff's Arguments

14         Plaintiff argues that he is entitled to summary judgment because defendant Mays

15  committed medical malpractice and was deliberately indifferent to his serious medical conditions,

16  specifically his wrist pain and hernia.  ECF No. 211 at 1-35.

17             B.    Defendants' Response

18         Defendants argue that plaintiff has failed to meet his burden of proof, that the evidence

19  shows that Mays was not deliberately indifferent, and that plaintiff's malpractice claims are

20  barred.  ECF No. 222.

21      V.    Legal Standards for Summary Judgment

22         Summary judgment is appropriate when the moving party "shows that there is no genuine

23  dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

24  Civ. P. 56(a).  Under summary judgment practice, "[t]he moving party initially bears the burden

25  of proving the absence of a genuine issue of material fact."  In re Oracle Corp. Sec. Litig., 627

26  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The

27  moving party may accomplish this by "citing to particular parts of materials in the record,

28  including depositions, documents, electronically stored information, affidavits or declarations,

1    stipulations (including those made for purposes of the motion only), admissions, interrogatory

2    answers, or other materials" or by showing that such materials "do not establish the absence or

3    presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

4    support the fact."  Fed. R. Civ. P. 56(c)(1).

5           "Where the non-moving party bears the burden of proof at trial, the moving party need

6    only prove that there is an absence of evidence to support the non-moving party's case."  Oracle

7    Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B).

8    Indeed, summary judgment should be entered, "after adequate time for discovery and upon

9    motion, against a party who fails to make a showing sufficient to establish the existence of an

10   element essential to that party's case, and on which that party will bear the burden of proof at

11   trial."  Celotex, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element

12   of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such

13   a circumstance, summary judgment should "be granted so long as whatever is before the district

14   court demonstrates that the standard for the entry of summary judgment, as set forth in Rule

15   56(c), is satisfied."  Id.

16              "When the party moving for summary judgment would bear the
                burden of proof at trial, it must come forward with evidence which
17              would entitle it to a directed verdict if the evidence went
                uncontroverted at trial.  In such a case, the moving party has the
18              initial burden of establishing the absence of a genuine issue of fact
                on each issue material to its case."
19

20   Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006) (quoting C.A.R. Transp.

21   Brokerage Co. v. Darden Rests., Inc., 213 F.3d 474, 480 (9th Cir. 2000)).

22          If the moving party meets its initial responsibility, the burden then shifts to the opposing

23   party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

24   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  In attempting to establish the

25   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

26   of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

27   admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.

28   Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a

                                                      5

1  fact "that might affect the outcome of the suit under the governing law," and that the dispute is

2  genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving

3  party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

4       In the endeavor to establish the existence of a factual dispute, the opposing party need not

5  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

6  dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

7  trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987)

8  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).  Thus, the

9  "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see

10 whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal

11 quotation marks omitted).

12      "In evaluating the evidence to determine whether there is a genuine issue of fact, [the

13 court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls

14 v. Cent. Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted).  It is the

15 opposing party's obligation to produce a factual predicate from which the inference may be

16 drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

17 demonstrate a genuine issue, the opposing party "must do more than simply show that there is

18 some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

19 omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

20 non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391

21 U.S. at 289).

22      Defendants simultaneously served plaintiff with notice of the requirements for opposing a

23 motion pursuant to Rule 56 of the Federal Rules of Civil Procedure along with their motion for

24 summary judgment.  ECF No. 150; see Klingele v. Eikenberry, 849 F.2d 409, 411 (9th Cir. 1988)

25 (pro se prisoners must be provided with notice of the requirements for summary judgment); Rand

26 v. Rowland, 154 F.3d 952, 960 (9th Cir. 1998) (en banc) (movant may provide notice).

27 ////

28 ////

1    VI.    Legal Standard for Deliberate Indifference to a Serious Medical Need

2         "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

3    must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091,

4    1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires plaintiff

5    to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

6    could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

7    (2) "the defendant's response to the need was deliberately indifferent." Id.  (some internal

8    quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

9         Deliberate indifference is a very strict standard.  It is "more than mere negligence."

10   Farmer v. Brennan, 511 U.S. 825, 835 (1994).  Even civil recklessness—failure "to act in the face

11   of an unjustifiably high risk of harm that is either known or so obvious that it should be

12   known"—is insufficient to establish an Eighth Amendment claim.  Id. at 836-37 (citation

13   omitted).  A prison official will be found liable under the Eighth Amendment when "the official

14   knows of and disregards an excessive risk to inmate health or safety; the official must both be

15   aware of facts from which the inference could be drawn that a substantial risk of serious harm

16   exists, and he must also draw the inference." Id. at 837.  A plaintiff can establish deliberate

17   indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible

18   medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin,

19   974 F.2d at 1060).

20        A difference of opinion between an inmate and prison medical personnel—or between

21   medical professionals—regarding the appropriate course of treatment does not by itself amount to

22   deliberate indifference to serious medical needs.  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th

23   Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To establish that a difference of

24   opinion rises to the level of deliberate indifference, plaintiff "must show that the chosen course of

25   treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious

26   disregard of an excessive risk to [the prisoner's] health.'" Toguchi, 391 F.3d at 1058 (quoting

27   Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

28   ////

1    VII.    Evidentiary Issues

2            A.    Request for Judicial Notice

3        Both parties have requested that the court take judicial notice of various filings in this

4    case.  ECF Nos. 153, 204.  "The court may judicially notice a fact that is not subject to reasonable

5    dispute because it: (1) is generally known . . . or (2) can be accurately and readily determined

6    from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The

7    requests for judicial notice will therefore be granted.

8            Plaintiff has also filed a document styled as a request for judicial notice that alleges

9    defense counsel is attempting to paint him as a drug abuser and requests that the court disallow

10   any discussion of his medical records after October 22, 2015.  ECF No. 235.  This is not a matter

11   proper for judicial notice and the request will be denied.  With respect to plaintiff's medical

12   records, the court will consider only those records that are relevant to deciding the motions for

13   summary judgment.

14           B.    Plaintiff's Evidentiary Objections

15       Plaintiff objects to the declaration of Dr. Feinberg (ECF No. 154), which defendants rely

16   on to support their motion for summary judgment, on the ground that they failed to disclose Dr.

17   Feinberg as an expert witness, as required by Federal Rule of Civil Procedure 26(a)(2)(A).  ECF

18   No. 214, 228, 232.  However, absent a stipulation or court order, expert witnesses are not required

19   to be disclosed until at least ninety days before trial.  Fed. R. Civ. P. 26(a)(2)(D).  To the extent

20   plaintiff is attempting to argue that Dr. Feinberg should have been disclosed as a witness as part

21   of initial disclosures, this case is exempt from initial disclosure because when plaintiff first

22   brought this action he was a prisoner and unrepresented by counsel.  Fed. R. Civ. P.

23   26(a)(1)(B)(iv).  Accordingly, defendants were not required to disclose the fact that they would

24   be relying on Dr. Feinberg's declaration in moving for summary judgment absent a discovery

25   request from plaintiff.

26           C.    Defendants' Evidentiary Objections

27       Defendants have made various objections to evidence produced by plaintiff.  ECF No.

28   223.  Rule 56(c)(4) of the Federal Rules of Civil Procedure states that affidavits and declarations

submitted for or against a summary-judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  In other words, only admissible evidence may be considered by the court.  Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988) (citations omitted).  "In general, inadmissible hearsay evidence may not be considered on a motion for summary judgment."  Anheuser-Busch, Inc. v. Nat. Beverage Distribs., 69 F.3d 337, 345 n.4 (9th Cir. 1995) (citation omitted).  Statements in affidavits that are legal conclusions, speculative assertions, or statements of hearsay evidence do not satisfy the standards of personal knowledge, admissibility, and competence required by Rule 56(c)(4).  Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citations omitted).  However, "[a]t the summary judgment stage, [the court does] not focus on the admissibility of the evidence's form.  [It] instead focus[es] on the admissibility of its contents."  Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (citations omitted).  In other words, the court can consider the evidence if its contents could be presented in an admissible form at trial.  Fraser, 342 F.3d at 1037.

Defendants object to plaintiff's reliance upon allegations contained in his prior filings However, "[a] plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence."  Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).  The third amended complaint, as well as plaintiff's other motions identified by defendants, have all been signed under penalty of perjury.  See ECF No. 45 at 31; ECF No. 115 at 14; ECF No. 117 at 7; ECF No. 169 at 16.  Therefore, to the extent the contents are based on personal knowledge they may be considered and the objection is overruled.

Defendants also object to plaintiff's health care appeals as unauthenticated and inadmissible hearsay.  ECF No. 223 at 2.  Although defendants' assert the documents are unauthenticated, they do not actually challenge their authenticity or accuracy, and have in fact submitted many of the same appeals in support of their motion for summary judgment.  Assuming authentication, the documents are not hearsay.  To the extent there may be hearsay statements contained within the appeals, defendants have not identified any specific instances of hearsay and,

9

1  regardless, they are not grounds to disregard the appeals as a whole.  Since the existence and

2  contents of plaintiff's appeals could be made admissible at trial with proper authentication, and

3  defendants do not contest their accuracy, the court will consider the records to the extent they are

4  relevant to resolving the motion and the objections are overruled.

5        Defendants object to documents related to housing assignments and transfers as irrelevant

6  to resolving the motion and unauthenticated but do not identify the documents at issue.  Id. at 2-3.

7  The objections are therefore overruled.

8        Next, defendants object to declarations made by other inmates as containing hearsay and

9  lacking personal knowledge and competency to testify to the matters contained therein.  Id. at 3.

10  Defendants have not identified any specific instances of hearsay within the declarations.  To the

11  extent the declarations are not based upon personal knowledge or do not establish competency to

12  testify, they will not be considered.  Defendants' objections are otherwise overruled.

13        Plaintiff has also submitted a printout from the Mayo Clinic that defendants object to as

14  unauthenticated.  Id. at 3-4.  However, to the extent the information provided in the printouts is

15  available on the Mayo Clinic's website,[2] it is easily authenticated and the objection is overruled.

16        Defendants object to various statements within plaintiff's statement of facts as medical or

17  legal conclusions.  Id. at 4.  To the extent plaintiff's facts contain medical or legal conclusions,

18  the court agrees that plaintiff has not established competency as a medical expert and legal

19  conclusions are not facts upon which summary judgment can be supported.  Defendants'

20  objections will therefore be sustained.

21        Finally, defendants object to plaintiff's hernia journal on the grounds that it is immaterial,

22  irrelevant, and constitutes a conclusory, self-serving document.  Id.  Because plaintiff's journal

23  addresses matters of which plaintiff has personal knowledge, their contents could be made

24  admissible through plaintiff's testimony and can therefore be considered on summary judgment

25  and defendants' objections are overruled.  See Fraser, 342 F.3d at 1036-37 (ruling that diary's

26  contents may be considered on summary judgment although diary inadmissible at trial).

27

28  [2]  See Mayo Clinic, *Inguinal hernia*, https://www.mayoclinic.org/diseases-conditions/inguinal-hernia/symptoms-causes/syc-20351547.

VIII.   Material Facts

    A.    Preliminary Considerations

Local Rule 260(a) provides that a motion for summary judgment "shall be accompanied by a 'Statement of Undisputed Facts' that shall enumerate discretely each of the specific material facts relied upon in support of the motion." However, upon review of the parties' statements of undisputed facts, the court finds that neither party has complied with this rule.

Rather than addressing the specific care provided by Mays, defendants' statement of undisputed facts (DSUF) is largely comprised of compound, summary statements regarding the care plaintiff received from defendant Mays and other health care providers. See, e.g., DSUF (ECF No. 152) ¶¶ 7-10. Yet in arguing that summary judgment is appropriate, defendants go through specific encounters plaintiff had with Mays and other providers and rely on statements regarding the appropriate standard of care included in Dr. Feinberg's declaration but not included in their statement of facts. ECF No. 151 at 15-23, 26-28. Defendants are clearly relying upon these facts as material support for their motion and they were therefore required to be included in their statement of facts. Defendants' failure to comply with the rule has made it unnecessarily complicated for plaintiff to respond to the facts and the court to resolve the motion. The court further notes that defendants' citations to the second amended complaint are not in a useable format and will therefore be disregarded.

Plaintiff's statement of undisputed facts (PSUF) is also defective. Rather than setting out discrete material facts, plaintiff's statement of facts is comprised almost entirely of arguments and irrelevant allegations related to counsel's conduct and his conditions while drafting his motion. See, e.g., PSUF (ECF No. 212) passim. Plaintiff's statement of facts also largely fails to address specific instances of defendant Mays conduct, instead relying on broad, general claims that she disregarded his conditions and lied in her notes. See, e.g., PSUF ¶¶ 21-23, 41.

As a result of both parties' failure to comply with Local Rule 260(a), the court will rely largely upon plaintiff's medical records, the authenticity of which is not in dispute. Plaintiff's disputes as to how accurately the records depict each encounter will also be addressed, to the extent he has addressed specific encounters.

B.      The Facts Before the Court

        The following facts are undisputed unless otherwise specified.  In 2014, while in the custody of the San Diego County Sheriff's Office, plaintiff was diagnosed with a hernia and had x-rays taken that showed an old scaphoid fracture in his left wrist.  DSUF ¶ 3; Response to DSUF (ECF No. 169) ¶ 3; ECF No. 186-1 at 412-13.  Plaintiff began his incarceration with the CDCR in July 2014, and his preexisting hernia, fractured wrist, and HCV infection were identified and documented in his medical record.  DSUF ¶ 4; Response to DSUF ¶ 4.  He also underwent laboratory testing for his HCV.  Id.  During the time plaintiff was treated by Mays, he did not meet the treatment eligibility for HCV and was to be reassessed annually.  DSUF ¶ 5.[3]

        On March 12, 2015, plaintiff had his first appointment with defendant Mays during which plaintiff's HCV was discussed and his request for treatment was denied.  PSUF ¶ 19; Response to PSUF ¶ 19; ECF No. 186-1 at 314, 316.  Plaintiff told Mays he had pain and nausea from his hernia and pain in his left wrist, but she refused to address these issues, instead telling him that she would only address one issue per visit.  PSUF ¶ 30.  Mays disputes these statements.  Response to PSUF ¶ 30.

        Plaintiff was scheduled to see Mays for his wrist, back, and hernia pain on March 24, 2015, but he was not seen due to a scheduling conflict on Mays' part and had to be rescheduled.  PSUF ¶ 23; ECF No. 186-1 at 303.  He was rescheduled for April 7, 2015, but was not seen.  ECF No. 186-1 at 291.  Plaintiff asserts that he reported to the CTC, but another nurse filled out a fraudulent refusal form and refused to have him escorted to the RN line after he started asking why his HCV, wrist, and hernia were being ignored.  PSUF ¶ 24.  Defendants dispute these statements as being contradicted by the medical records and based solely on plaintiff's uncorroborated and self-serving declaration.  Response to PSUF ¶ 24.  They assert that plaintiff refused to be seen and refused to sign the refusal form, and that his refusal was witnessed by two

---

[3]  Plaintiff disagrees with the CCHCS Care Guidelines cited by defendants but does not dispute that he was ineligible for treatment under those guidelines.  Response to DSUF ¶ 5.  To the extent plaintiff asserts that he should have received an ultrasound every six months rather than annual reassessment, the policy he cites states that six-month ultrasounds are to be provided "[a]fter diagnosis of clinical or biopsy proven cirrhosis" (ECF No. 171 at 177), and there is no evidence that plaintiff had diagnosed cirrhosis.  This portion of DSUF ¶ 5 is therefore deemed undisputed.

individuals.  Id.  The refusal form from April 7, 2015, is not signed by plaintiff.  ECF No. 32-3 at 188.

On April 16, 2015, plaintiff was seen by Mays.  PSUF ¶ 32.  The record indicates that plaintiff was being seen for his wrist, back, and hernia pain and that plaintiff complained of increased groin pain over the last four months with radiation to his right testicle, but that he denied nausea, vomiting, diarrhea, or constipation.  ECF No. 186-1 at 287.  With respect to plaintiff's hernia, Mays recorded "small outpouching noted to R inguinal area [with] easy reduction [with] one finger 0 abd bruising" and that plaintiff stated he had not worn his abdominal binder because he lost it.  Id.  The notes further reflect that Mays ordered an abdominal ultrasound and abdominal binder, gave plaintiff a hernia educational brochure, and ordered a follow-up in forty-five to sixty days.  Id. at 287, 289.  According to plaintiff's records, the ultrasound was cancelled on April 20, 2015, because plaintiff did not meet the minimum criteria for an ultrasound.  Id. at 285.  The record noted that plaintiff's hernia was "small, easily reducible" and that plaintiff was without symptoms other than intermittent pain and that there was no evidence of strangulation.  Id.

Plaintiff asserts that Mays refused to address any issue other than his hernia and again told him that she would only address one issue per visit even though his wrist was swollen and he told her it was causing him pain.  PSUF ¶ 32.  With respect to his hernia, he agrees that Mays provided educational materials and ordered an abdominal binder and ultrasound, but asserts that she cancelled the ultrasound order four days later.  PSUF ¶¶ 33-34.  Plaintiff disputes the recorded size of his hernia and states that his hernia was "the size of a banana or cucumber" and "hung down 5-6 inches from the lower stomach."  PSUF ¶ 34.  Mays affirms the size of plaintiff's hernia as recorded and states that the ultrasound request was denied by the supervising medical providers because plaintiff did not meet the criteria for a surgical referral or ultrasound. Response to PSUF ¶¶ 33-34.  She disputes plaintiff's claim that she refused to address anything other than his hernia.  Response to PSUF ¶ 32.

On June 5, 2015, plaintiff was seen by Mays regarding Appeal 8389, which dealt with the treatment of plaintiff's hernia.  ECF No. 186-1 at 254; ECF No. 186-2 at 93-102.  The appeal

1  stated that plaintiff had "daily nausea, pain, septic poop (not normal odor) sometimes an

2  abnormal amount" and that the abdominal binder he was given "increases symptoms 10 fold."

3  ECF No. 186-2 at 95, 97.  Mays noted that plaintiff was not wearing his abdominal binder, that

4  there was no change in his hernia, and that all issues had been previously addressed during his

5  April 16, 2015 appointment.  ECF No. 186-1 at 254.  She also completed a referral for hernia

6  surgery, which was denied because the hernia was "reducible and small per provider information

7  above.  No indication for surgical intervention was given."  Id. at 236.  Plaintiff asserts that

8  during the interview Mays was hostile and deliberately refused to include his explanation for why

9  he was not wearing the abdominal binder.  ECF No. 171 at 34-35.  He disputes that there was no

10 change in his hernia at the time of the interview.  Id. at 34.

11        On June 19, 2015, plaintiff was seen by Mays regarding Appeal 8429, which dealt with

12 his wrist and back pain.  ECF No. 186-1 at 238; ECF No. 186-2 at 106-118.  The appeal stated

13 that plaintiff had been putting in medical requests since March but had yet to see a doctor about

14 his issues.  ECF No. 186-2 at 109.  It also stated that he was in constant pain and that he kept

15 "getting told, this is for Hep-C or this is for hernia, blown every time.  '4 times.'"  Id.  Mays

16 recorded that plaintiff "admits to refusing surgery despite MRI L wrist results" and that he filed

17 an appeal before seeing a provider because "he felt like it was going to be awhile for pain issues

18 to be addressed."  ECF No. 186-1 at 238.  The notes further reflect that plaintiff could sit, stand,

19 bend at the waist in all directions, and ambulate without an altered gait.  Id.  Plaintiff requested to

20 be removed from oxcarbazepine because he felt it was not effective and requested gabapentin,

21 which he had received at a prior facility.  Id.  Mays discontinued the medication with instructions

22 to continue with NSAIDS and submitted plaintiff's name to the pain committee for his left wrist

23 and back pain.  Id. at 238, 240.  The denial of plaintiff's hernia surgery was also discussed and

24 plaintiff was issued a scrotal support.  Id.

25        On July 9, 2015, plaintiff was seen by Mays for a chronic care follow-up for his HCV and

26 hernia.  ECF No. 186-1 at 225-26, 228.  Mays recorded that plaintiff denied abdominal pain,

27 nausea, vomiting, and dark stools or blood in stools, but that he complained of occasional

28 intermittent constipation.  Id. at 225.  She further noted that plaintiff's hernia was "a very small

outpouching in the right inguinal area which is easily reducible at this time." Id.  Plaintiff was to continue using the hernia truss and NSAIDs for pain as well as fiber and a stool softener for constipation. Id.  He was to return in three to four months for an HCV follow-up and laboratory values. Id.

On August 6, 2015, plaintiff was seen by Mays regarding his hernia pain and Appeal 8807, which appears to relate to plaintiff's housing status.  ECF No. 186-1 at 216.  Plaintiff reported difficulty urinating and vomiting and that it had been a week since the last time he vomited. Id.  He denied any fever, chills, nausea, vomiting, diarrhea, or abdominal pain at the time of the appointment. Id.  Mays noted that plaintiff's hernia truss was in place, he should continue using the hernia truss and NSAIDs for pain, milk of magnesia was to be discontinued, and plaintiff should continue with stool softeners as needed for constipation. Id.

On September 10, 2015, Mays saw plaintiff for a follow-up on x-rays that were taken of his left wrist.  ECF No. 186-1 at 205.  The x-rays showed that plaintiff had scapholunate advanced collapse. Id. at 209.  An ortho consult was requested and took place the following day, and it was recommended that plaintiff receive surgery and pain management. Id. at 203, 205.

On September 16, 2015, plaintiff was seen by Mays for a follow-up to his consult.  ECF No. 186-1 at 197.  Mays noted that plaintiff denied any change in his current chronic pain and that he was to continue using NSAIDs and gabapentin. Id.  A request for surgery was submitted on a routine basis. Id. at 162.

On October 13, 2015, plaintiff was seen by Mays and counseled regarding his refusal to take oxcarbazepine, which he stated did not work for his pain.  ECF No. 186-1 at 185.

On October 22, 2015, plaintiff was seen by Mays for a follow-up on his left wrist pain and medication refusal.  ECF No. 186-1 at 178.  Mays noted that plaintiff complained of left wrist pain and stated that he refused oxcarbazepine because it did not work. Id.  She further noted that plaintiff "wants opiates, nothing else," and became upset when he was informed that he would continue with his current medication until his surgery. Id.

Plaintiff disputes that he *demanded* opioids, but acknowledges that he did request them. Response to DSUF ¶ 13; ECF No. 214 at 7.  He further states that Mays' notes regarding

1   plaintiff's condition were inaccurate, as she failed to note his "hernia limp and slow gait," and

2   that she fails to note that his oxcarbazepine was supposed to have been discontinued in June

3   because it had not done anything to alleviate his pain.  Id.

4        Plaintiff refused any further appointments with Mays (DSUF ¶ 13), including a November

5   3, 2015, HCV follow-up (ECF No. 186-1 at 175).  He had surgery on his wrist on November 5,

6   2015.  Id. at 170-71.  On May 16, 2016, plaintiff underwent surgery to repair his hernia and was

7   found to have two hernias, both of which were repaired.  ECF No. 32-2 at 271.

8        IX.   Discussion

9             A.   Defendant Allison

10       As an initial matter, the court notes that plaintiff has recently filed a notice of change of

11  address that indicates he has been released from prison, and there is no indication that he will

12  return to CDCR custody.  ECF No. 243.  As such, his requests for injunctive relief are now moot

13  and defendant Allison, who has been named solely in her official capacity for the purposes of

14  providing injunctive relief should be dismissed.  See Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir.

15  1995) (inmate's release from prison generally moots any claims for injunctive relief unless suit

16  has been certified as a class action.).

17            B.   HCV Treatment

18       Defendants have moved for summary judgment on plaintiff's claim that defendant Mays

19  was deliberately indifferent when she denied him HCV antiviral treatment.  ECF No. 151 at 26-

20  28.  However, the third amended complaint did not state a claim against Mays for denial of HCV

21  treatment and no such claims are before this court.[4]  See ECF No. 45 at 12-13.  The undersigned

22  further notes that any to bring such claims would be futile.  While plaintiff clearly disagrees with

23  the criteria for HCV treatment eligibility, he does not contest that he did not meet those criteria

24  while being treated by defendant Mays, nor does he argue or provide evidence that she had the

25  ability to override those criteria.

26  ////

27  _____

28  [4]  Although plaintiff was found to state a claim against defendant Phui for failing to treat his HCV (ECF No. 51 at 17-19), Phui has since been dismissed from this action (ECF No. 177).

16

1        C.      Hernia Treatment

2            As set forth above, the facts regarding Mays' treatment of plaintiff's hernia are in dispute.

3    Mays asserts that plaintiff's hernia was small and easily reducible, that his only symptom was

4    intermittent pain, and that he refused to wear his hernia belt or take his prescribed medications.

5    ECF No. 16-19.  She further contends that she continued to monitor plaintiff's condition, which

6    did not change throughout the time she saw him.  Id.  Mays states that while she put in requests

7    for an ultrasound and surgery, they were denied because plaintiff did not meet the eligibility

8    criteria.  Id. at 16-17.  She also submits the declaration of Dr. Feinberg, who opines that surgical

9    intervention was not recommended in those circumstances and that Mays' treatment was

10   appropriate.  ECF No. 154 at 3-7.  Plaintiff, on the other hand, avers both generally and with

11   respect to specific encounters, that Mays consistently ignored his complaints of nausea, vomiting,

12   constipation, and increased pain; falsified records regarding his symptoms and the size of his

13   hernia, which he claims was the size of a banana or cucumber; and refused to address or record

14   his complaints that his abdominal binder caused pain, nausea, vomiting, and gagging when worn.

15   Response to DSUF ¶ 7; PSUF ¶¶ 34, 36, 38; ECF No. 171 at 26-29, 34-35; ECF No. 211 at 19-

16   22.

17           The evidence before the court establishes that there is a genuine dispute of material fact as

18   to whether Mays was deliberately indifferent with regard to plaintiff's hernia and both parties'

19   motions for summary judgment should be denied.  Assuming Mays' version of events to be true,

20   she provided appropriate treatment for plaintiff's hernia.  However, assuming plaintiff's version

21   of the facts to be true—particularly as to the size of his protruding hernia—Mays failed to address

22   a worsening condition that quite obviously posed a serious medical risk, and falsified plaintiff's

23   records which preventing him from obtaining further treatment.  While plaintiff has not

24   established competency to make medical diagnoses or to opine as to whether treatment was

25   medically acceptable, he is competent to testify to things within his personal knowledge, such as

26   how he was feeling, his objective condition (including the visible size of his hernia), and what he

27   reported to defendant Mays during their encounters.  Taking plaintiff's facts as true and drawing

28   inferences in his favor as the non-moving party, the records indicate that Mays' minimization of

                                                    17

plaintiff's condition led to the requests for an ultrasound and surgery being denied, since they state plaintiff did not qualify because the hernia was small and reducible and that plaintiff's only symptom was intermittent pain.  ECF No. 186-1 at 236, 285.  That other providers' notes were consistent with Mays' notes goes towards plaintiff's credibility, which the court cannot assess on summary judgment.

>D.   Wrist Treatment

Whether defendant Mays was deliberately indifferent in treating plaintiff's wrist is similarly dependent on which version of the facts is believed.  Mays asserts that she did not see plaintiff for his complaints of wrist pain until June 19, 2015, when she saw him regarding a health care appeal.  ECF No. 151 at 20.  Prior to that, he was either seen by other providers regarding his complaints or did not raise any complaints when seen.  Id.  She also argues that plaintiff refused to take his medications or be seen by other providers and demanded opioids to manage his pain even though they were not medically indicated.  Id. at 20-22; ECF No. 222 at 13-17.  However, though defendants assert that plaintiff regularly refused to take the medications he was prescribed, the records cited do not demonstrate the habitual refusal portrayed by defendants and instead indicate that plaintiff gave the medications a chance to work before discontinuing them when they did nothing to relieve his pain.  See ECF No. 186-1 at 185 (10/13/15: refusing re-prescription of oxcarbazepine because it does not work), 191 (10/7/15: refusing Abilify), 193 (indicating Abilify first prescribed on 7/23/15), 236 (6/19/15: wanted to discontinue oxcarbazepine because it does not work), 254 (6/5/15: request to stop oxcarbazepine), 318 (showing oxcarbazepine first prescribed on 2/24/15); ECF No. 32-2 at 56 (5/21/15: requesting that oxcarbazepine be stopped because it does not work).

Furthermore, plaintiff asserts that he raised the issue with Mays multiple times, starting with his first appointment on March 12, 2015, and that each time she refused to examine his wrist or discuss his complaints of swelling and increasing pain or falsified records to minimize his reported symptoms to prevent further treatment from the pain management committee.  Response to DSUF ¶¶ 10-12; PSUF ¶¶ 19, 21-22, 27, 29-30, 32, 39, 41; ECF No. 171 at 14, 28-29; ECF No. 211 at 9, 12-13, 16, 25.  Plaintiff further assets that the medication he was prescribed had no

18

1    effect on his pain, which he reported to Mays and she ignored, and he never demanded opioids,

2    but instead sought effective pain management for his increasing pain, which he mentioned had

3    included opioids in the past.  Response to DSUF ¶¶ 13-14; PSUF ¶ 25; ECF No. 171 at 11-12, 14-

4    15; ECF No. 211 at 14-15, 31; ECF No. 238 at 16.

5            While plaintiff does not have the right to dictate what medication or treatment he receives,

6    see Stiltner v. Rhay, 371 F.2d 420, 421 n.3 (9th Cir. 1967),[5] he is entitled to constitutionally

7    adequate treatment, see Edmo v. Corizon, Inc., 935 F.3d 757, 793 (9th Cir. 2019) (doctor was

8    deliberately indifferent when he continued treatment plan he knew was ineffective without

9    reevaluating prisoner or recommending change to treatment).  For these reasons, there is a dispute

10   of fact as to whether Mays was made aware of and ignored plaintiff's complaints of swelling,

11   increased pain, and ineffective pain relief and minimized his symptoms to interfere with his

12   ability to receive alternate treatment.  Accordingly, neither party is entitled to summary judgment.

13                    E.    Medical Malpractice

14           Defendants do not move for summary judgment on plaintiff's malpractice claim.  ECF

15   No. 151.  In their opposition to plaintiff's motion for summary judgment they argue that plaintiff

16   should not be able to pursue a claim for medical malpractice because it was not pled in the

17   complaint, he has failed to meet establish the elements of a malpractice claim, and any such claim

18   is barred by Eleventh Amendment immunity.  ECF No. 222 at 30-32.  However, plaintiff's

19   complaint clearly stated he was alleging both deliberate indifference and malpractice against

20   defendant Mays.  ECF No. 45 at 12.  Defendants' argument that a malpractice claim is barred by

21   Eleventh Amendment immunity is also without merit.  Defendant Mays is sued in her individual

22   capacity and the Eleventh Amendment therefore does not bar plaintiff's malpractice claim.  See

23   Ashker v. Cal. Dep't of Corr., 112 F.3d 392, 395 (9th Cir. 1997) (Eleventh Amendment does not

24   bar state tort claims against defendants sued in their individual or personal capacities).

25   _____

26   [5]  "[P]laintiff's allegations show only that he has not been receiving the kind and quality of
     medical treatment he believes is indicated.  Like the Seventh Circuit, 'we know of no authority
27   standing for the proposition that such a claim as plaintiff attempts to assert here is cognizable
     under the Federal Civil Rights Act.'" (quoting United States ex rel. Lawrence v. Ragen, 323 F.2d
28   410, 412 (7th Cir. 1963)).  Id.

1    Defendants also argue that plaintiff cannot prevail on his malpractice claim because he has

2    not produced any expert testimony establishing that Mays failed to meet the standard of care or

3    that her conduct was a substantial factor in causing plaintiff's injuries.  ECF No. 222 at 30-31.

4    They assert that their introduction of expert testimony, and plaintiff's failure to provide expert

5    testimony, necessarily doom the claim.  Id.  However, while plaintiff may have failed to meet his

6    burden to show that he is entitled to summary judgment, see Flowers v. Torrance Mem'l Hosp.

7    Med. Ctr., 8 Cal. 4th 992, 1001 (1994) ("The standard of care against which the acts of a

8    physician are to be measured is a matter peculiarly within the knowledge of experts; it presents

9    the basic issue in a malpractice action and can only be proved by their testimony, unless the

10   conduct required by the particular circumstances is within the common knowledge of the

11   layman." (citations omitted)), that does not mean that defendants are entitled to summary

12   judgment.  As noted above, defendants have not moved for summary judgment on plaintiff's

13   malpractice claim.  Moreover, while defendants have proffered an expert opinion, that opinion is

14   based upon facts as reflected in plaintiff's medical records, which are very much in dispute.  That

15   dispute prevents summary judgment in defendants' favor on plaintiff's malpractice claim for the

16   same reasons it prevents summary judgment on plaintiff's deliberate indifference claims, as

17   explained above.  See Griffith v. Los Angeles County, 267 Cal. App. 2d 837, 847 (1968)

18   ("Opinions of value and other expert opinions, *even though uncontradicted*, are worth no more

19   than the reasons and factual data upon which they are based.").

20           F.      Qualified Immunity

21           "[G]overnment officials performing discretionary functions generally are shielded from

22   liability for civil damages insofar as their conduct does not violate clearly established statutory or

23   constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457

24   U.S. 800, 818 (1982) (citations omitted).  In analyzing a qualified immunity defense, the court

25   must consider the following: (1) whether the alleged facts, taken in the light most favorable to the

26   plaintiff, demonstrate that defendant's conduct violated a statutory or constitutional right; and (2)

27   whether the right at issue was clearly established at the time of the incident.  Saucier v. Katz, 533

28   U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009)

20

1   (overruling Saucier's requirement that the two prongs be decided sequentially).

2          Defendants argue that the Ninth Circuit's opinion in Hamby v. Hammond, 821 F.3d 1085

3   (9th Cir. 2016), entitles Mays to qualified immunity with respect to the treatment she provided

4   plaintiff, particularly with respect to his hernia.  ECF No. 151 at 23-25.  In Hamby, the Ninth

5   Circuit found that the defendants were entitled to qualified immunity for their denial of surgery

6   for the plaintiff's reducible hernia because the existing case law demonstrated "that existing

7   precedent does not 'place[ ] beyond debate the unconstitutionality of' the course of non-surgical

8   treatment pursued by the prison officials in Hamby's case."  821 F.3d at 1094.  But Hamby is

9   distinguishable from this case because there is no indication that plaintiff's underlying condition

10  was in dispute or that the defendants were deliberately minimizing or failing to address or

11  accurately record the plaintiff's symptoms in order to interfere with treatment or prevent surgery.

12  While Mays would be entitled to qualified immunity if it were undisputed that plaintiff's hernia

13  was small and easily reducible and that he was not reporting increasingly severe symptoms, those

14  are not the circumstances presented here.  If plaintiff's statements regarding the size of his hernia,

15  his increasingly severe symptoms, and Mays deliberate minimization of his symptoms are taken

16  as true, then Mays may well have been deliberately indifferent.  No reasonable person would have

17  believed that it was constitutional to falsify records and interfere with a prisoner's ability to

18  obtain further treatment for a serious and worsening condition.  Similarly, accepting plaintiff's

19  evidence as true, the record before the court does not permit a conclusion that a reasonable person

20  would not have understood that a failure to examine and treat plaintiff's wrist in response to his

21  complaints about swelling and pain would violate the Eighth Amendment.

22      X.      Conclusion

23          For the reasons set forth above, the parties' cross-motions for summary judgment should

24  be denied, and defendant Allison should be dismissed because the claims for injunctive relief are

25  moot.

26      XI.     Miscellaneous Relief

27          Plaintiff has filed a motion for clarification and motion to seal records.  ECF Nos. 234,

28  239.  In his motion for clarification, he asks whether it is normal for defendants' counsel to

1   provide him documents without page numbers or Bates stamps and asserts that he was provided

2   4,000 pages of records without any Bates stamps.  ECF No. 234.  Defendants assert that the

3   records they provided were Bates stamped and that plaintiff has made subsequent filings that

4   included Bates stamped pages.[6]  Response to PSUF ¶ 5.  The court will provide clarification to

5   the extent that plaintiff is advised that voluminous records should be numbered in a way that

6   allows for specific pages to be referenced.

7        With respect to plaintiff's request to seal, he requests that the court seal any medical

8   records from after October 22, 2015.  ECF No. 239.  However, he does not identify the specific

9   documents he seeks to have sealed.  Plaintiff was previously advised that if he sought to have

10  additional records sealed, they would need to be identified by either their ECF number and page

11  number or Bates stamp number.  ECF No. 202 at 3.  Plaintiff's assertion that he was provided

12  records without Bates stamps does not prevent him from otherwise identifying the specific

13  documents at issue.  The court will not comb through plaintiff's records to identify pages that

14  may fall within the category of documents plaintiff seeks to seal.  The request to seal will

15  therefore be denied.

16      XII.    Plain Language Summary of this Order for a Pro Se Litigant

17          Because there are disputes of fact regarding your condition and Mays conduct, and the

18  outcome depends on which version of facts is believed, it is being recommended that defendants'

19  motion for summary judgment and your motion for summary judgment be denied.  It is also being

20  recommended that defendant Allison be dismissed because your requests for injunctive relief are

21  moot now that you are no longer in prison.

22          Accordingly, IT IS HEREBY ORDERED that:

23      1.   Defendants' request for judicial notice (ECF No. 153) is GRANTED.

24      2.   Plaintiff's April 22, 2022 request for judicial notice (ECF No. 204) is GRANTED.

25      3.   Plaintiff's motions for extension of time (ECF Nos. 233, 237) are GRANTED and

26  plaintiff's reply in support of his motion for summary judgment (ECF No. 238) is deemed timely.

27

28  ---

[6]  Defendants do not identify those filings.

22

1     4.  Plaintiff's motion for clarification (ECF No. 234) is GRANTED to the extent

2     clarification has been provided above.

3     5.  Plaintiff's September 13, 2022 request for judicial notice (ECF No. 235) is DENIED.

4     6.  Plaintiff's motion to seal (ECF No. 239) is DENIED.

5     IT IS FURTHER RECOMMENDED that:

6     1.  Defendants' motion for summary judgment (ECF No. 149) be DENIED.

7     2.  Plaintiff's motion for summary judgment (ECF No. 211) be DENIED.

8     3.  Defendant Allison be dismissed from this case.

9     These findings and recommendations are submitted to the United States District Judge

10    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

11    after being served with these findings and recommendations, any party may file written

12    objections with the court and serve a copy on all parties.  Such a document should be captioned

13    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

14    objections shall be served and filed within fourteen days after service of the objections.  The

15    parties are advised that failure to file objections within the specified time may waive the right to

16    appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

17    DATED: April 6, 2023

18

19    ALLISON CLAIRE
      UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28